IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

MICHAEL PELLIS ARCHITECTURE PLC, *et al.*,
    Plaintiffs,

    v.                                                            Civil No. 3:22cv470 (DJN)

M.L. BELL CONSTRUCTION LLC, *et al.*,
    Defendants.

## MEMORANDUM OPINION

Plaintiffs Michael Pellis Architecture PLC ("Pellis Firm") and Michael A. Pellis ("Mr. Pellis") (collectively "Plaintiffs") bring this action against Defendants M.L. Bell Construction LLC ("M.L. Bell") and Michael F. Bell ("Mr. Bell") (collectively "Defendants"), alleging copyright infringement, violation of rights to attribution and integrity, trespass to chattels and indemnification claims. This matter comes before the Court on Plaintiffs' Motion for Direction to Copyright Office ("Motion for Direction" (ECF No. 23)), moving for the Court to direct the Copyright Office ("Office") to process an application for supplementary registration, and Defendants' Motion to Dismiss First Amended Complaint ("Motion to Dismiss" (ECF No. 18)).

For the reasons set forth below, the Court will DENY Plaintiffs' Motion for Direction (ECF No. 23). Additionally, the Court will GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss (ECF No. 18). The Court DISMISSES WITHOUT PREJUDICE Count One as to Mr. Pellis' copyright infringement claim against Defendants and Count Four (Indemnification). This case shall proceed on Count One as to the Pellis Firm's copyright infringement claim against Defendants, as well as Count Two (Infringement of Rights to Attribution and Integrity) and Count Three (Trespass to Chattels) against Defendants.

# I.    BACKGROUND

This action arises out of Defendants' alleged submission of unauthorized architectural plans to the City of Williamsburg.  Defendants allegedly prepared the unauthorized plans by duplicating Plaintiffs' copyright-protected plans without a license and by making changes to the infringing copies under Plaintiffs' falsified signature, illegally duplicated seal, logo, name and title block.  Plaintiffs bring claims for copyright infringement, violation of rights to attribution and integrity, trespass to chattels and indemnification.

## A.    Factual Background

At this stage, the Court must accept as true the facts set forth in the Amended Complaint (ECF No. 15).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Against this backdrop, the Court accepts the following facts as alleged for purposes of resolving the instant motion.

The Amended Complaint alleges that Mr. Pellis and the Pellis Firm created several different versions of architectural drawings and plans ("Work") for a new brewery location and tasting room in Williamsburg, Virginia ("Brewery Project").  (Am. Compl. ¶¶ 9, 11.)  Without Plaintiffs' knowledge, Defendants prepared an altered set of plans ("Unauthorized Plans") for the Brewery Project by duplicating Plaintiffs' Work and making digital changes to the copies.  (Am. Compl. ¶¶ 12–13.)  The Unauthorized Plans contained mistakes, inaccurate information and new designs and content that had not been generated by or in consultation with Plaintiffs.  (Am. Compl. ¶ 18.)  Defendants also attached Mr. Pellis' architect's seal, signature and license number, as well as the Pellis Firm's title block and logo, on each page of the Unauthorized Plans. (Am. Compl. ¶ 16.)  Plaintiffs did not grant Defendants any license, permission, or rights to make copies of the Work, and Plaintiffs had no contractual relationship with Defendants.  (Am. Compl. ¶ 27.)

2

On March 16, 2022, without involvement or permission from Plaintiffs, Defendants filed the Unauthorized Plans with the City of Williamsburg ("City") in support of an application for a building permit. (Am. Compl. ¶ 12.)  Plaintiffs only discovered that Defendants submitted the Unauthorized Plans after the City plan review office contacted Mr. Pellis regarding an incorrect building use classification in the Unauthorized Plans. (Am. Compl. ¶ 15.)  On May 18, 2022, following routine processing by the City, the Unauthorized Plans first became available to the public. (Am. Compl. ¶ 13.)  The Amended Complaint alleges that March 18, 2022 constitutes the date of publication.  (Am. Compl. ¶ 13.)

According to the terms of their written agreement, Plaintiffs and the Brewery Project's owner agreed that "[o]wnership of copyright in all Works remains the property of Architect" — with "Architect" defined as Michael Pellis Architecture, PLC.  (Am. Compl. ¶ 10.)  As such, the copyright registration numbered VA 2-306-788 ("Registration") names "Michael Pellis Architecture PLC" as the author and claimant of the Work; the Registration does not name Mr. Pellis as an author or co-claimant.  (Am. Compl. Ex. B at 2.)  Additionally, the Registration identifies the date of first publication as March 16, 2022, the date that Defendants filed the Unauthorized Plans with the City.  (Am. Compl. Ex. B at 2.)  The Registration has an effective date of registration of June 17, 2022, and describes the material registered as "architectural work."  (Am. Compl. Ex. B at 2.)

On August 18, 2022, the Pellis Firm filed an application for supplementary registration with the Office to amend its Registration for the Work.  (Mem. in Supp. of Mot. for Direction ("Mot. for Direction") (ECF No. 24) at 1.)  The Pellis Firm seeks to add Mr. Pellis as a co-claimant on the Registration and correct the date of publication to March 18, 2022.  (Mot. for Direction at 6.)  However, the Office suspended the application for supplementary registration

3

due to the pending litigation, noting Plaintiffs' proposed changes "are directly at issue in the litigation and any supplementary registration may confuse or complicate the pending dispute." (Mot. for Direction Ex. A at 3.)  The Office declined to take further action absent contrary direction from the Court.  (Mot. for Direction Ex. A at 3.)

### B.      Procedural History

#### 1.  Motion to Dismiss Amended Complaint

On July 1, 2022, Plaintiffs filed their Complaint (ECF No. 1), raising three counts for relief based on the above allegations.  On September 1, 2022, Plaintiffs filed their Amended Complaint, now raising four claims against Defendants.  (ECF No. 15.)  Count One brings a copyright infringement claim against Defendants, alleging that Defendants duplicated Plaintiffs' copyright-protected architectural plans without a license and digitally altered the infringing copies.  (Am. Compl. ¶ 13.)  Count Two asserts that Defendants have violated Mr. Pellis' rights to attribution and integrity under 17 U.S.C. § 106A, the Visual Artists Rights Act ("VARA"), by falsely representing Mr. Pellis as the author of a work that he did not create.  (Am. Compl. ¶ 36.) Count Three alleges a common law trespass to chattels claim based on Defendants' seizure and conversion of Mr. Pellis' architect's seal, signature and license number, as well as the Pellis Firm's title block and logo (collectively "Materials").  (Am. Compl. ¶¶ 42–43.)  Finally, Count Four asserts a claim against Defendants for indemnification, alleging that Defendants' unauthorized use of Plaintiffs' Materials created an uninsured liability for Plaintiffs.  (Am. Compl. ¶ 48.)

On September 14, 2023, Defendants filed their Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (ECF No. 18.)  Defendants argue that Mr. Pellis lacks standing to pursue the copyright infringement claim under Count One.

4

(Defs.' Mem. in Supp. of Mot. to Dismiss ("MTD") (ECF No. 19) at 7–9.)  Defendants further argue that Plaintiffs are precluded from seeking statutory damages under Count One.  (MTD at 9.)  Defendants also challenge the VARA and common law trespass to chattels claims on the grounds that Plaintiffs insufficiently pled facts to support a claim.  (MTD at 12, 17.)  And, lastly, Defendants argue that the indemnification claim under Count Four should be dismissed for lack of subject matter jurisdiction, or alternatively, for failure to allege sufficient facts to support injunctive relief.  (MTD at 20–21.)  On September 28, 2022, Plaintiffs filed their Memorandum in Opposition to Defendants' Partial Motion to Dismiss ("Opp. to MTD" (ECF No. 21)).  On October 4, 2022, Defendants filed their Reply to Plaintiffs' Memorandum in Opposition to Defendants' Partial Motion to Dismiss, ("Reply" (ECF No. 22)), rendering Defendants' Motion to Dismiss ripe for review.

## 2. Motion for Direction to Copyright Office

On October 18, 2022, Plaintiffs filed a Motion for Direction to Copyright Office, (ECF No. 23), moving the Court to direct the Office to process an application for supplementary registration.  On October 21, 2022, Defendants filed their Opposition to Plaintiffs' Motion for Direction to Copyright Office ("Opp. to Mot. for Direction" (ECF No. 26)).  On October 27, 2022, Plaintiffs filed their Reply Memorandum in Support of Motion for Direction to Copyright Office (ECF No. 27), rendering Plaintiffs' Motion for Direction ripe for review.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint; it does not serve as the means by which a court will resolve factual contests, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a motion to dismiss, the Court accepts the plaintiff's well-pleaded

5

allegations in the complaint as true and views the facts in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the Federal Rules of Civil Procedure, a complaint must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

On a motion under Rule 12(b)(6), a court may not consider any documents outside of the complaint, unless the motion is converted into one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint" without converting a Rule 12(b)(6) motion into one for summary judgment, if the authenticity of such documents is not challenged. *Witthohn*, 164 F. App'x at 396–97.

6

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal for lack of subject matter jurisdiction may attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *White v. CMA Constr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). When a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the court applies a standard patterned on Rule 12(b)(6) and assumes the truthfulness of the facts alleged in the complaint. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

### III. ANALYSIS

The Court will begin by discussing Plaintiffs' Motion for Direction. Next, the Court turns to Defendants' Motion to Dismiss, addressing standing before discussing the merits. *See Griffin v. Dep't of Labor Fed. Credit Union*, 293 F. Supp. 3d 576, 578 (E.D. Va. 2018), *aff'd*, 912 F.3d 649 (4th Cir. 2019) (addressing standing arguments first, because an absence of standing deprives the court of the power to adjudicate anything further about the claim); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

#### A. Motion for Direction

Plaintiffs are requesting that this Court direct the Office to process an application for supplementary registration to add Mr. Pellis as a co-claimant and change the date of publication to March 18, 2022. Plaintiffs contend that the supplementary application will "clarify and

narrow the issues under dispute by bringing the Registration into line with the facts." (Mot. for Direction at 5.) The Court disagrees and finds no good cause to direct the Office to allow Plaintiffs' application for supplementary registration to proceed while this litigation is pending. The Court therefore DENIES Plaintiff's Motion for Direction.

A supplementary registration may be used to "correct an error in a copyright registration or to amplify the information given in a registration." 17 U.S.C. § 408(d). For instance, a supplementary registration can be used to add the name of a co-author or co-claimant who was omitted at the time that the basic registration was made. Compendium of U.S. Copyright Office Practices § 1802.5 (rev. 3d ed. 2021) ("Compendium"). Generally, a supplementary registration is also appropriate to correct the date of publication if the applicant provided the wrong date of publication in the application for basic registration. *Id.* § 1802.6(I). The supplementary registration augments, but does not supersede, the basic registration. 17 U.S.C. § 408(d). The Copyright Office maintains both records to allow courts to determine whether the changes are material and whether the changes should be deemed effective as of the date of the basic registration or the date of the supplementary registration. Compendium § 1802.12.

The Office may decline to issue a supplementary registration while litigation is pending "if it seems likely that the proposed change would be directly at issue in the litigation" or "if it seems likely that the proposed change . . . may confuse or complicate the pending dispute." Compendium § 1802.9(G). The Compendium indicates that the Office may issue a supplementary registration while litigation is pending if the proposed change is "minor" or "if the proposed change does not appear to be directly at issue in the dispute." *Id.* Examples of such changes include spelling mistakes, clerical errors or changes to the title of the work. *Id.*

The Compendium further establishes that the Office "does not adjudicate factual or legal disputes involving claims to copyright." *Id.* § 1808.

Neither the Court nor the parties of this case have identified binding precedent addressing the standard applicable to the relief sought in the Motion for Direction. However, the language in the Compendium and the Office's response to Plaintiffs' application for supplementary registration indicate that it lies within the Court's discretion whether to direct the Office to deviate from its standard practice of suspending applications while litigation is pending. While the Office has a procedure for correcting innocent and inadvertent misstatements, courts have disfavored attempts to supplement registrations that are the subject of pending copyright infringement actions. *PaySys Int'l, Inc. v. Atos Se, Worldline SA*, 226 F. Supp. 3d 206, 217 (S.D.N.Y. 2016); *see also Oliver v. Meow Wolf, Inc.*, 2023 WL 4353541, at *12 (D.N.M. July 5, 2023) (declining to direct the Office to process plaintiff's application for supplementary registration during pending litigation).

Pursuant to the policies set forth in the Compendium, the Office suspended Plaintiffs' application for supplementary registration in light of the pending litigation. In doing so, the Office noted that Plaintiffs' proposed changes "are directly at issue in the litigation and any supplementary registration may confuse or complicate the pending dispute." (Mot. for Direction Ex. A at 3.) The Court agrees. Plaintiffs' failure to identify Mr. Pellis as a co-claimant on the Registration pertains to the central question of whether Mr. Pellis has standing to assert the copyright infringement claim in his individual capacity. Similarly, the date of publication constitutes a contested issue that directly impacts Plaintiffs' rights to recover statutory damages under the Copyright Act.

9

Furthermore, Plaintiffs' attempt to correct the Registration for the Work appears to be in direct response to Defendants' Memorandum of Law in Support of Motion to Dismiss (ECF No. 12) filed on August 12, 2022. In their August 18, 2022 application for supplementary registration, Plaintiffs acknowledged that they were correcting the date of publication and adding Mr. Pellis as a co-claimant "for standing and claims prosecution purposes." (Mot. for Direction Ex. A at 3.) Allowing Plaintiffs to supplement their Registration after Defendants noted deficiencies in Plaintiffs' claims would permit an inequitable use of the supplementary registration system. *Cf. Kluber Skahan & Assocs., Inc. v. Cordogen, Clark & Assoc., Inc.*, 2009 WL 466812, at *6 (N.D. Ill. Feb. 25, 2009) (noting concern that plaintiff supplemented its registration "as a tactic to facilitate suit"). Therefore, the Court declines to direct the Office to process Plaintiffs' application for supplementary registration while this litigation is pending.

### B.    Motion to Dismiss

As a preliminary matter, the Court will address whether Defendants' Motion to Dismiss has been withdrawn. Plaintiffs assert that Defendants' Motion to Dismiss was withdrawn pursuant to Local Civil Rule 7(E), as Defendants did not notice a hearing on their motion. (Mot. for Direction at 2.) Defendants vehemently disagree. (Opp. to Mot. for Direction at 3–4.) Importantly, "the application of the local rules is within the discretion of the Court . . . ." *Michael v. Sentara Health Sys.*, 939 F. Supp. 1220, 1225 n.3 (E.D. Va. 1996). This Court does not utilize the provisions of Local Rule 7(E) to the extent that it requires a movant to schedule a hearing within thirty (30) days after filing a motion. Accordingly, the Court will allow Defendants' Motion to Dismiss to proceed on the merits.

### 1.  Mr. Pellis lacks standing to assert a copyright infringement claim.

Defendants argue that Mr. Pellis lacks standing to sue for copyright infringement, because Mr. Pellis does not own a copyright to the Work.  (MTD at 9.)  The Court agrees and finds that Mr. Pellis has failed to allege facts to establish an injury in fact.  The Court therefore GRANTS Defendants' Motion to Dismiss as to Mr. Pellis' copyright infringement claim in Count One.

To satisfy the case-or-controversy requirement of Article III, the party invoking federal jurisdiction must establish his or her standing to sue.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Balzer & Assocs., Inc. v. Union Bank & Trust Co.*, 2009 WL 1675707, at *2 (E.D. Va. June 15, 2009) ("On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction has the burden of proving subject matter jurisdiction.").  To meet the "irreducible constitutional minimum" requirements for standing, a party bringing a claim must establish three elements:  (1) that the plaintiff has sustained an injury in fact; (2) that the injury traces to the defendants' actions; and (3) that a favorable judicial decision could likely redress the injury.  *Uzuegbunam v. Precsewski*, 141 S. Ct. 792, 797 (2021); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011).  Thus, "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

To establish a copyright infringement claim, a plaintiff must prove that: (1) he "owned the copyright to the work that was allegedly copied" and (2) "the defendant copied protected elements of that work."  *Towler v. Sayles*, 76 F.3d 579, 581 (4th Cir. 1996) (citing *Feist Pub'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  Under 17 U.S.C. § 501(b), a party is only entitled to institute an action for infringement if the party owned the copyright at the time

that the alleged infringement occurred.  17 U.S.C. § 501(b); *Princeton Payment Sols., LLC v. ACI Worldwide, Inc.*, 2014 WL 4104170, at *4 (E.D. Va. Aug. 15, 2014).  In other words, Mr. Pellis only has standing to sue for copyright infringement if he owned those rights at the time that Defendants allegedly infringed the Work.

The Amended Complaint alleges that the Pellis Firm owns the copyright to the Work, and that "Mr. Pellis is the author and co-claimant with respect to the [Work]." (Am. Compl. ¶ 29.) However, the documents relied on in the Amended Complaint fail to support this bare conclusion.  The Brewery Project plans indicate that "ownership of copyright in all Work remains the property of the Architect Michael Pellis Architecture PLC." (Am. Compl. Ex. A at 1 (alteration in original).)  In addition, the Registration names "Michael Pellis Architecture PLC" as the author and claimant, with no mention of Mr. Pellis.  (Am. Compl. Ex. B at 2.)  And, lastly, the terms in the written agreement between Plaintiffs and the Brewery Project owner reiterate that "[o]wnership of copyright in all Works remains the property of Architect" — with "Architect" defined as Michael Pellis Architecture PLC.  (Am. Compl. ¶ 10.)  Because the facts do not plausibly establish Mr. Pellis' ownership of a copyright for the Work, Mr. Pellis lacks standing to bring the copyright infringement claim.

Therefore, the Court will GRANT IN PART Defendants' Motion to Dismiss First Amended Complaint and DISMISS Mr. Pellis' copyright infringement claim in Count One WITHOUT PREJUDICE.[1]

---

[1]      A "dismissal for lack of standing — or any other defect in subject matter jurisdiction — must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *Ali v. Hogan*, 26 F.4th 587, 600 (4th Cir. 2022).

## 2.  The Pellis Firm has plausibly established a claim for statutory damages.

Defendants argue that Plaintiffs are precluded from seeking statutory damages under the

Copyright Act in Count One, because infringement commenced before the effective date of

registration.  (MTD at 9–10.)  Defendants further assert that Plaintiffs may not recover statutory

damages pursuant to 17 U.S.C. § 412(2), which permits a plaintiff to seek statutory damages if

registration is made within three months after the first publication of the work.  (MTD at 10.)

Because the Court finds that the Pellis Firm pled facts supporting a plausible claim for statutory

damages under the Copyright Act, the Court will DENY Defendants' Motion to Dismiss the

Pellis Firm's claim for statutory damages in Count One.[2]

Under the Copyright Act, an infringer can be held liable for either actual damages and

profits or statutory damages.  17 U.S.C. § 504(a); *see X-It Prod., LLC v. Walter Kidde Portable*

*Equip., Inc.*, 227 F. Supp. 2d 494, 527 (E.D. Va. 2002) (discussing statutory damages as an

alternative to actual damages and profits).  In cases of willful infringement, the Court may award

as much as $150,000 in statutory damages.  17 U.S.C. § 504(c)(2).  However, § 412 limits the

scope of § 504 by providing that no award of statutory damages or attorney's fees shall be made

if:

> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.

---

[2]      Since the Court lacks subject matter jurisdiction over Mr. Pellis' copyright infringement claim against Defendants, the Court declines to assess Mr. Pellis' eligibility for statutory damages under Count One.

Section 101 of the Copyright Act defines publication as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101. The Copyright Act provides that a certificate of registration constitutes *prima facie* evidence of the validity of the copyright and the facts stated in the certificate, provided that the work is registered before or within five years after the work is first published. 17 U.S.C. § 410(c).

The dispute as to whether the Pellis Firm may recover statutory damages hinges on the date of publication. If the date of publication constitutes March 18, 2022, as Plaintiffs allege in their Amended Complaint, the Pellis Firm becomes eligible for statutory damages pursuant to § 412(2) since the Work was registered on June 17, 2022 — within three months after first publication of the Work. The registration certificate states that the date of publication is March 16, 2022; however, Plaintiffs assert that the actual date of publication is March 18, 2022, because the Unauthorized Plans first became available to the public on that date. (Am. Compl. ¶ 13.)

While the facts alleged in the Complaint with respect to the date of publication are inconsistent with the Registration, the Court does not weigh the evidence at this stage. *Republican Party of N.C.*, 980 F.2d at 952. The date of publication is a contested issue that cannot be resolved without facts that the parties will develop during discovery. As such, it would be inappropriate at this time to foreclose the Pellis Firm's request for statutory damages. Accordingly, the Court will DENY Defendants' Motion to Dismiss as to the Pellis Firm's claim for statutory damages in Count One.

### 3. Mr. Pellis has plausibly pled that the at-issue work is a "work of visual art" protected under the Visual Artists Rights Act.

Defendants challenge Mr. Pellis' claim under 17 U.S.C. § 106A on the grounds that the architectural plans and drawings at issue do not constitute a "work of visual art." (MTD at 13.)

14

The Court rejects this argument and finds that Mr. Pellis has pled facts supporting a plausible inference that the at-issue work constitutes a work of visual art protected under 17 U.S.C. § 106A. Thus, the Court will DENY Defendants' Motion to Dismiss as to Count Two.

Section 106A was enacted as part of the Visual Artists Rights Act of 1990 ("VARA") to protect the "moral rights" of certain artists. *Quality King Distribs., Inc. v. L'anza Rsch. Int'l, Inc.*, 523 U.S. 135, 149 n.21 (1998). The right of attribution consists of the right to be recognized by name as the author of their work and to prevent the use of the author's name on works created by others. 17 U.S.C. § 106A(a)(1); *Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979, 985 (9th Cir. 2002). The right of integrity allows artists to protect their works against intentional distortions, mutilations or other modifications that would be prejudicial to their honor or reputations. 17 U.S.C. § 106A(a)(3)(A); *Mass. Museum of Contemp. Art Found., Inc. v. Buchel*, 593 F.3d 38, 53 (1st Cir. 2010). The statute also affords artists the right to prevent destruction of a work that has achieved "recognized stature." 17 U.S.C. § 106A(a)(3)(B).

Congress limited the application of moral rights to authors of works of visual art. 17 U.S.C. § 106A(a). A "work of visual art" is defined, in relevant part, as "a painting, drawing, print, or sculpture" existing in a single copy or limited edition of 200 copies or fewer that are signed and consecutively numbered by the author. 17 U.S.C. § 101. However, the definition of a work of visual art expressly excludes "any poster, map, globe, chart, technical drawing, diagram, model, applied art, [and] motion picture." *Id.* The legislative history explains that "courts should use common sense and generally accepted standards of the artistic community in determining whether a particular work falls within the scope of the definition [of a work of visual art]." *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 84 (2d Cir. 1995) (citing H.R. Rep. No. 101-514, at 11 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6915, 6921). As the Second Circuit

15

explained, protection under VARA often depends on the objective and evident purpose of the work. *Pollara v. Seymour*, 344 F.3d 265, 269 (2d Cir. 2003).

The facts alleged in the Amended Complaint plausibly establish that Mr. Pellis' architectural drawings and plans ("Architectural Work") constitute a work of visual art within the scope of the statute. Defendants argue that the Architectural Work consists of a technical drawing and thus expressly excluded from the definition of a work of visual art, (MTD at 14), whereas Mr. Pellis contends that the Architectural Work constitutes a drawing subject to protection under VARA. (Opp. to MTD at 5–6.) The Amended Complaint alleges that Mr. Pellis authored "architectural drawings and plans" for the Brewery Project. (Am. Compl. ¶ 10.) And, notably, the Architectural Work was registered for copyright as an "architectural work" — as opposed to a technical drawing. (Am. Compl. Ex. B at 2.)

Congress added the definition of a "work of visual art" at the same time that it enacted the Architectural Works Copyright Protection Act ("AWCPA"). Pub. L. No. 101-650, 104 Stat. 5089 (1990). The AWCPA added to § 101 the definition of "architectural work," which includes "architectural plans[] or drawings." *See* 17 U.S.C. § 101. The Court may infer from the statutory context that if Congress meant to exclude all architectural work from VARA, it would have done so more explicitly. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). While the parties disagree as to whether the Architectural Work qualifies as a work of visual art, the Court declines to resolve factual contests at this stage. *Cf. Cheffins v. Stewart*, 825 F.3d 588, 595 (9th Cir. 2016) (analyzing whether a transformed school bus constituted a work of visual art under VARA at the summary judgment phase).

16

On the face of the Complaint, Mr. Pellis has sufficiently pled that the Architectural Work is a work of visual art to survive a motion to dismiss. The Court will DENY Defendants' Motion to Dismiss as to Count Two.

### 4. Plaintiffs have pled sufficient facts to support a trespass to chattels claim.

Defendants challenge the trespass to chattels claim on two grounds: (1) neither Mr. Pellis nor the Pellis Firm have standing to pursue a trespass to chattels claim based upon the other's property; and (2) Plaintiffs fail to allege impairment or damage sufficient to state a plausible trespass to chattels claim. (MTD at 17–18.) The Court discusses each in turn.

As to the issue of standing, a complaint must establish that the plaintiff has a "personal stake" in the alleged dispute and that the injury is particularized as to him. *Raines v. Byrd*, 521 U.S. 811, 819 (1997). "To have standing to sue for damages for tortious injury to property, a plaintiff must have an interest in the property injured." *Keepe v. Shell Oil Co.*, 220 Va. 587, 590 (1979). The Amended Complaint alleges that Defendants created and filed the Unauthorized Plans with "Mr. Pellis' name, the Pellis Firm name and incorrect contact information, Mr. Pellis' unauthorized signature, an image of the seal of Mr. Pellis' stamp and his professional license number, and the Pellis Firm's title block and logo." (Am. Compl. ¶ 16.) Plaintiffs further contend that Defendants diminished the value of the Materials "by using them in association with erroneous and deficient" architectural plans. (Am. Compl. ¶ 43.) The Court can infer based on the facts alleged in the Amended Complaint that Defendants' relevant conduct simultaneously injured Mr. Pellis' architect's seal, signature and license number ("Mr. Pellis' Materials"), as well as the Pellis Firm's title block and logo ("Pellis Firm's Materials"), allowing each Plaintiff to assert trespass to chattels claims for their respective property.

17

As to the merits of the claim, a trespass to chattels occurs when a person has "illegally seized the personal property of another and converted it to his own use." *Vines v. Branch*, 244 Va. 185, 190 (1992) (recognizing a claim for trespass to chattels and its corresponding five-year statute of limitations). Typically, such a tort occurs when a party "intentionally uses or intermeddles with personal property in the rightful possession of another without authorization." *Am. Online v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998) (citing Restatement (Second) of Torts § 217(b) (Am. L. Inst. 1965)). A person who commits a trespass to chattels is liable to the rightful possessor if "the chattel is impaired as to its condition, quality, or value." *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 621 (E.D. Va. 2005) (citing Restatement (Second) of Torts § 218(b)).

Like conversion, the tort of trespass to chattels has traditionally protected only interests in tangible property over which one can exert physical control. *See* Restatement (Second) of Torts §§ 216–217; *see also Chattel*, Black's Law Dictionary (11th ed. 2019) ("Movable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property."). Nonetheless, more recently, courts have held that the unauthorized transmission of unsolicited bulk email to customers constitutes trespass to chattels under Virginia law. *See, e.g., Am. Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 451 (E.D. Va. 1998). Courts have also extended the tort to protect intangible property. *See Se. Wholesale Corp. v. Cox Commc'ns Hampton Rds., LLC*, 2013 WL 2147478, at *6 (E.D. Va. May 14, 2013) (denying motion to dismiss trespass to chattels claim based on plaintiff's property interest in a toll-free telephone number); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 2011 WL 4625760, at *5 (E.D. Va. Oct. 3, 2011) (recognizing a property interest in intangible property, even if such property was not merged into a document evidencing title or ownership).

18

To prevail on a trespass to chattels claim, a plaintiff must demonstrate that the property was "impaired as to its condition, quality, or value." *SecureInfo Corp.*, 387 F. Supp. 2d at 621; *see also State Analysis, Inc. v. Am. Fin. Servs. Assoc.*, 621 F. Supp. 2d 309 (E.D. Va. 2009) (finding that the plaintiff adequately pled a trespass to chattels claim since the value of plaintiff's possessory interest in its website was diminished if unauthorized users accessed password-protected areas). In *SecureInfo*, a software developer brought an action for trespass to chattels when a competitor allegedly gained unauthorized access to the developer's server and made copies of its software. *SecureInfo Corp.*, 387 F. Supp. 2d at 600–01. The developer alleged that the competitor's conduct caused damage to the developer by affecting its business goodwill and reputation and by diminishing the value of its confidential information and other proprietary data. *Id.* at 621. Because the developers did not allege that the software itself was damaged or diminished in value, the Court granted the competitor's motion to dismiss the trespass to chattels claim. *Id.*

Unlike the software developer in *SecureInfo*, Plaintiffs have not alleged mere copying of the taken Materials. Rather, Plaintiffs allege that Defendants diminished the value of Mr. Pellis' Materials and the Pellis Firm's Materials "by using them in association with erroneous and deficient" architectural plans, (Am. Compl. ¶ 43), which were later distributed to plumbing and electrical contractors, subcontractors, project managers, decorators or designers, building supply providers, the Brewery Project owner, the City, the location's landlord and others related to the Brewery Project. (Am. Compl. ¶¶ 30, 37.) At this stage, the Court may infer that associating faulty architectural work with Mr. Pellis' Materials and the Pellis Firm's Materials may damage or diminish their value sufficiently to state a claim for trespass to chattels.

Moreover, the Court declines to dismiss Count Three on the notion that "whatever interests the Plaintiffs have in these intangible items, they have not been trespassed against, i.e., nothing has been physically altered, manipulated, damaged, concealed, or taken in a manner that prevented their use." (Reply at 9.) Trespass to chattels does not require Defendants to exercise dominion and control in such a way that prevents Plaintiffs' continued use of their property since diminution of its condition, quality, or value as a result of Defendants' conduct can also be the predicate for liability. *SecureInfo Corp.*, 387 F. Supp. 2d at 621; Restatement (Second) of Torts § 218(b).

As Plaintiffs sufficiently pled facts alleging that their respective property was impaired, the Court will DENY Defendants' Motion to Dismiss as to Count Three.

### 5. Plaintiffs' indemnification claim is not ripe for adjudication.

Defendants provide two arguments for dismissal of Count Four. First, Defendants contend that the indemnification claim should be dismissed under Rule 12(b)(1), because the claim is not ripe for adjudication. Second, Defendants argue that the claim should be dismissed pursuant to Rule 12(b)(6), because Plaintiffs have failed to allege the elements of either a contractual or equitable indemnification case. For the following reasons, this Court finds that the indemnification claim is not ripe for decision. The Court therefore will GRANT Defendants' Motion to Dismiss as to Count Four.

Ripeness is a "justiciability doctrine [that] determines when a case or controversy is fit for federal judicial review." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019). "The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" *Miller v. Brown*, 462 F.3d 312, 318–19 (4th Cir. 2006) (quoting *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584 (1947)). A claim stands

ripe for adjudication "when the action in controversy is final and not dependent on future uncertainties." *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014). Conversely, a claim is not ripe "if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013). Furthermore, an issue is not ripe for decision "[w]here an injury is contingent upon a decision to be made by a third party that has not yet acted." *Id.* at 758.

In determining ripeness, courts will balance "the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002). A claim stands fit for judicial decision "when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 198 (4th Cir. 2013). Hardship is "measured by the immediacy of the threat and the burden imposed" on a plaintiff. *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208–09 (4th Cir. 1992).

In claims for indemnification, the Fourth Circuit has instructed that whether an "issue is ripe for adjudication depends on the facts and circumstances of the case." *A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co.*, 559 F.2d 928, 932 (4th Cir. 1977). "An important factor in considering ripeness is whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated." *Id.* (finding an indemnification claim not ripe where "there has been neither a determination of liability nor a settlement in any of the personal injury or wrongful death actions pending against [the defendants]").

Since any future uninsured liability claims are wholly speculative at this point, Plaintiffs' claim for indemnification is not ripe for adjudication. Plaintiffs urge the Court to grant an

21

injunction requiring Defendants to defend, indemnify and hold Plaintiffs harmless from any uninsured liability claims related to the Brewery Project. (Am. Compl. ¶ 49.) Plaintiffs allege that injunctive relief is necessary since "Plaintiffs and the Court are unable to determine the timing or the amount of the ultimate liability." (Am. Compl. ¶ 50.) Moreover, "[i]t is impossible to know . . . whether any claims or damages will ever come to pass." (Am. Compl. ¶ 48.) The uncertainty of any potential claims renders the injury to Plaintiffs wholly speculative — it is "based upon events or determinations which may not occur as anticipated," or indeed may not occur at all. *Mowinckles*, 559 F.2d at 932. Furthermore, the underpinning of the claim is entirely "contingent upon a decision to be made by a third party that has not yet acted." *Doe v. Va. Dep't of State Police*, 713 F.3d at 758. Under these circumstances, the Court finds that Plaintiffs' indemnification claim is not ripe for adjudication.

Therefore, the Court lacks subject matter jurisdiction over the indemnification claim and refrains from addressing the parties' Rule 12(b)(6) arguments. The Court will GRANT IN PART Defendants' Motion to Dismiss First Amended Complaint and will DISMISS Count Four WITHOUT PREJUDICE.

## IV.    CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiffs' Motion for Direction (ECF No. 23). Additionally, the Court will GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss (ECF No. 18). The Court will DISMISS WITHOUT PREJUDICE Count One as to Mr. Pellis's copyright infringement claim against Defendants and Count Four (Indemnification). This case shall proceed on Count One as to the Pellis Firm's copyright infringement claim against Defendants, as well as Count Two (Infringement of Rights

to Attribution and Integrity) and Count Three (Trespass to Chattels) against Defendants.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Dated:  September 22, 2023